CYRUS CLEVELAND, RESPONDENT, *v.* MARGARET CRAWFORD AND OTHERS, APPELLANTS.

*Claims to real property — determination of under* 2 *R. S.,* 312, *secs.* 1–4 — *Code,* 449 — *Recitals in a deed, not evidence of title of another in adjoining property — Adverse possession — Statute of limitations — Married woman — Chap.* 200, *Laws of* 1848 — *chap.* 375, *Laws of* 1849 — *chap.* 90, *sec.* 7, *of* 1860 — *chap.* 741; *Laws of* 1870 — *Code, sec.* 73.

In proceedings under the statute (2 R. S., 312, § 1), to compel the determination of claims to real property, the "actual" possession means an actual occupation or possession, in fact, as contradistinguished from that constructive one which the legal title draws after it. The word "actual" in the statute is used in opposition to "virtual" or "constructive" and means an open, visible occupancy.

*Churchill* v. *Onderdonk* (59 N. Y., 134) followed.

The rule that a party once being in possession is presumed to continue in possession, cannot be applied where a statute requires proof of actual possession at the commencement of the action and for three years immediately preceding thereto. The proceeding being a strictly statutory one, those who resort to it must bring themselves within all its requirements. This statute and that relating to ejectment being intended to give correlative rights, the possession which entitles a party to institute a proceeding of this kind, must be such as would enable an adverse party to bring ejectment founded on that fact alone, namely, on an actual occupation.

Where it was attempted to be shown by a recital in a deed of adjoining property, from K.'s wife and others, that K. had acquired title to the lands in question, so that a deed by the sheriff on a sale under a judgment against K. conveying all the right, title and interest of K. in such land passed a fee and not a life estate, *held*, that the mere recital, referring to the land in controversy as the "portion" of K. afforded no ground for presuming a grant to him; that K. having a freehold estate in the share allotted to his wife, as tenant by the curtesy, it was not, on that account, improperly denominated by a stranger "his portion."

Where a sheriff's deed in effect conveyed only the life estate of the judgment debtor, on the death of the debtor, at common law, the sheriff's grantee would become tenant by sufferance to the reversioner ; but in this State, under 1 Revised Statutes, 749, section 7, he would be a trespasser, the statute having changed the common-law rule on this subject; no adverse possession could be predicated on his holding over, however, without proof of notice thereof to the reversioners; but where the sheriff's grantee conveys the fee of such land, the entry thereunder of the second grantee is sufficient to lay the foundation of an adverse possession.

Although a period of twenty-four years elapsed between the conveyance to such

second grantee and the commencement of this action, yet as it was in evidence that during, at least six years of that period, the land was not used for any purpose contemplated by the statute of limitations, lying in common and to all appearances vacant, *held,* that during that time the statute did not run to bar the true owner. To bar the true owner the adverse possession must be kept up during the requisite period prescribed by the statute by the usual cultivation or improvement, or by protecting the land by a substantial inclosure, or by using it for the supply of fuel or of fencing timber for the purposes of husbandry or the ordinary use of the occupant.

The defendant Margaret Crawford being a daughter and heir of Mrs. Kniffen, the wife of the judgment debtor, and married before the termination of the life estate vested by the sheriff's deed, and her husband still living, *held,* that although coverture is no longer a disability which prevents the running of the statute of limitations, the statute having been amended in that respect to conform to the changes made in the law for the protection of married women, yet such amendment did not affect her (Laws of 1860, chap. 90, § 7; Laws of 1870, chap. 741); the act of 1860 being limited, in respect to property acquired by a married woman by descent, to such as descended to her after the passage of the act; and the Code to causes of action which have accrued since its passage. (Sec. 73.)

As regarded the statute of limitations, it appeared that the defendant Margaret Crawford was married before the death of her father, which occurred in February, 1848 or 1849; if in 1848, then Mrs. C. was married before the passage of the earliest act for the protection of married women, the act of April 7, 1848, and the right of entry, in that case, belonged to her husband. If subsequent to April 7, 1848, yet as the act of 1848 did not include property which a married woman took by descent till amended by the act of April 11, 1849, at which date she was married; although she had a right of entry when the adverse possession of the second grantee commenced, yet the disability of her coverture had continued ever since.

APPEAL from a judgment in favor of the plaintiff, entered on the decision of a justice at the Circuit, a jury trial having been waived.

This action, commenced in May, 1873, was brought, under section 449 of the Code, to compel the determination of conflicting claims to real property, pursuant to provisions of the Revised Statutes. (3 R. S. [5th ed.], 599, *et seq.*)

Plaintiff claims he is the owner in fee as purchaser of some fourteen acres of land in the city of Yonkers, described in his complaint; that he was, at the time of the commencement of this action, and for three years preceding had been, in the actual possession thereof, and that defendants unjustly claim title in fee to some portion of it, but how much or what part he is unable to state. Defendants, in answer, set up: 1st. A general

denial. 2d. That they are owners in fee of about six acres of the premises mentioned in the complaint. And, 3d. As a bar to all further proceedings, that plaintiff, and those whose estate he has, was not at the time of the commencement of the action, and for the three years preceding had not been, in the actual possession of said premises.

Plaintiff, by an amended reply, made a general denial to defendants' answer; claimed title by adverse possession, and plead the statute of limitations.

Evidence was offered to show that the premises in question were formerly part of a farm owned by one Peter Nodine, and of which he died seized and possessed in 1815. That said Peter Nodine died intestate, leaving him surviving several children, one of whom was Ann Kniffen, the wife of Wm. Kniffen, who, upon the decease of her father, became and was seized in fee of an undivided share of the said farm by *descent cast*.

That after the decease of Peter Nodine, in 1816 his children made voluntary partition of said farm. In this partition the premises in question were allotted to said Ann Kniffen.

That Ann Kniffen died intestate in 1832, leaving her surviving several children by said Wm. Kniffen; and Wm. Kniffen died in February, 1848. The defendants, who claim title to the premises in question, are the children, and heirs of children, of said Ann Kniffen, and claim title as her heirs. The defendant Margaret Crawford was married before the decease of her father, Wm. Kniffen, and her husband is still living, and she has all the time since her said marriage been under *coverture*.

In 1821 one Halsey recovered a judgment in the Supreme Court of this State against said Wm. Kniffen, and in 1825 John Townsend, sheriff of Westchester county, on a writ of *fi. fa.* issued to him on said judgment, sold, as such sheriff, all the interest of said Wm. Kniffen, in and to the premises in question, to one Rapelye for $100, and gave him a certificate of sale thereof as such sheriff.

On the 7th of December, 1837, said Rapelye sold and assigned said certificate for $100 to Amos W. Gates; and on the 9th day of December, 1837, the said John Townsend made his deed, as late sheriff of said county, to said Gates, reciting therein the aforesaid facts as to the recovery of said judgment, writ, levy, sale, certificate

and transfer thereof, and thereby conveyed to said Gates all the estate and interest which said Wm. Kniffen had in and to said premises on the 4th day of September, 1821, or afterward. Gates took possession of said premises under said sheriff's deed, and occupied them until 1849, when he conveyed them, with other lands, to John Davidson. Said Davidson, in 1863, conveyed the said premises to Leonard W. Jerome, and Jerome conveyed the same to Jane E. Cornell in 1869, and, on the same day, she conveyed them to plaintiff.

There was evidence that Davidson, after the conveyance from Gates to him, made some use of this land by procuring from it fence-posts and shad-poles; but after the conveyance to Jerome in 1863, to the time of the conveyance to the plaintiff in 1869, the land appears to have been unoccupied. After the conveyance to the plaintiff, in the fall of 1869 and spring of 1870, the wood was cut off and the land laid out in lots, and streets were made through it.

A deed from James Nodine and others, including the said Ann Kniffen, to Moses Craft, of a parcel of land next adjoining the premises in question on the north, bearing date June 13, 1816, was offered in evidence, in which the premises in question were referred to as "the portion of William Kniffen."

Defendants moved for dismissal on the ground that plaintiff had not proved title nor actual possession at the commencement of the action, and for three years preceding, nor that defendants unjustly claimed title to the premises in question. This motion was denied by the court, and defendants excepted.

*John Flanders,* for the appellant.

*Duncan Smith,* for the respondent.

GILBERT, J. :

This case is within the rule laid down in *Churchill* v. *Onderdonk,* (59 N. Y., 134). That was a proceeding pursuant to the Revised Statutes (2 R. S., 312, § 1), to compel the determination of claims to vacant lots in Brooklyn. This is a proceeding under the same statute prosecuted in the form of an action conformably to section 449 of the Code, to compel the determination of claims to vacant lots in Yonkers. To entitle a party to the remedy here pursued, he must have been for three years in the actual possession of the property. In the case cited, that was interpreted to mean an actual occupation of the same, in other words a possession in

fact, as contradistinguished from that constructive one which the legal title draws after it. The correctness of that construction is apparent. The word " actual " in the statute is specially significant. It is plainly used in opposition to " virtual " or " constructive," and means an open visible occupancy. We think that was not shown in this case. It may be conceded that the plaintiff had made an entry upon the land, for the purpose of laying out and constructing streets upon it, and had exercised other occasional acts of owner-ship over it. But he never occupied it, and was not, therefore, in actual possession of it. The defendants might have entered during the years 1871, 1872 and 1873, without disturbing his possession, and they could not have maintained ejectment against him upon the allegation that he actually occupied the land. The statute under consideration, and that relating to ejectment are intended to give correlative rights. The possession which entitles a party to insti-tute a proceeding of this kind must be such as would enable the adverse party to bring ejectment founded on that fact alone, namely, an actual occupation. (2 R. S., 312, § 4.) If the premises are not actually occupied, then either party may maintain ejectment against the other, on proving that the defendant was exercising acts of ownership on the premises claimed, or claimed title thereto, or some interest therein at the commencement of the action. (Id.; *Banyer* v. *Empie*, 5 Hill, 48; *Abeel* v. *Van Gelder*, 36 N. Y., 513.) But neither can prosecute this proceeding without first taking possession of the land, and actually occupying it for three years, the sole object thereof being to quiet the title of a person in possession. (Gra. Pr., 849.) It is strictly a statutory proceeding, and those who resort to it must bring themselves within all the requirements of the statute. (*Bailey* v. *Southwick*, 6 Lans., 356–366; *Austin* v. *Good-rich*, 49 N. Y., 266.) The rule that a party once being in posses-sion is presumed to continue in possession, cannot be applied where a statute requires proof of actual possession at the commencement of the action, and for three years immediately preceding that act. Such a presumption might suffice to establish a constructive possession, but cannot be received as a substitute for evidence of a fact so palpable and capable of direct proof, as that of an actual possession of land. In every point of view, therefore, we think there was a failure of proof on this point. It is possible that this

objection may be overcome on a new trial.  We will, therefore, call attention to other rulings of the court below, which we think are erroneous.  That there was a valid partition of the lands of Peter Nodine, the common source of title, was satisfactorily shown. Indeed the claims of all parties rest upon the fact, that such partition was made.  It is not often that better proof is produced of so remote a transaction resting in parol.  Nor is there any reasonable ground for a presumption that William Kniffen had acquired the title to the share which his wife inherited in said lands, divided or undivided, before or after said partition was made.  The mere recital in a conveyance of adjoining land, made after the par-. tition, referring to the land in controversy as the portion of William Kniffen, affords no ground for presuming a grant to him.  He had a freehold estate in the share allotted to his wife as tenant by the curtesy, and such share was not on that account improperly denominated, by a stranger, his portion.

The conveyance of the sheriff to Gates transferred only the life estate of William Kniffen in the parcel allotted to his wife.  (2 R. S., 373, §§ 61, 62; 1 R. S., 739, § 143.)  At common law, Gates would upon the death of Kniffen have become tenant by sufferance to the reversioners (1 Wash. R. P., cap. 12, § 1); but in this State it has been provided by statute that, " every person having an estate of determinable upon any life or lives, who, after the determination such particular estate without the express consent of the party immediately entitled after such determination shall hold over and continue in possession of any lands, etc., shall be adjudged to be a trespasser, etc.  (1 R. S., 749, § 7.)  This statute has changed the rule of the common law on this subject.  (*Livingston* v. *Tanner*, 14 N. Y., 64; *Torrey* v. *Torrey*, id 430; *Reckhow* v. *Schanck*, 43 id., 451.) No adverse possession, however, could be predicated of his holding over without proof of notice thereof to the reversioners.  (*Grout* v. *Townsend*, 2 Hill, 554; 1 Wash. R. P. chap. 5, § 1.)

The conveyance by Gates to Davidson of the fee of the land and the entry by Davidson thereunder, was sufficient to lay the foundation of an adverse possession, but we think the evidence failed to show a continuation of such adverse possession for the requisite period of twenty years.  A period of twenty-four years, it is true, elapsed between the conveyance to Davidson and the commence

ment of this action, yet during at least six years of that period the land was not used for any purpose contemplated by the statute of limitations. It lay in common, and was to all appearance vacant. During that time the statute did not run. To bar the true owner the adverse possession must be kept up during the requisite period prescribed by the statute, by the usual cultivation or improvement, or by protecting the land by a substantial inclosure, or by using it for the supply of fuel or of fencing timber for the purposes of husbandry, or the ordinary use of the occupant. (Code, § 83; Wash. R. P., bk. 3, chap. 2, § 7, sub. 21.) The evidence we think shows that neither of these conditions was complied with after the conveyance to Jerome in 1863.

Margaret Crawford is a daughter and heir of Mrs. Kniffen. She was married before the termination of the life estate vested in Gates, and her husband is still living. Although coverture is no longer a disability which prevents the running of the statute of limitations, the statute having been amended in that respect to conform to the changes made in the law by the acts for the protection of married women, yet that amendment does not affect Mrs. Crawford. (Laws 1860, chap. 90, § 7; Laws 1870, chap. 741.) The act of 1860 conferred upon married women the right to sue and be sued in all matters having relation to their separate property, and by that of 1870, section 88 of the Code, was amended by dropping coverture from the enumeration of disabilities therein. But neither of these provisions affect Mrs. Crawford. The act of 1860 is in terms limited in respect to property acquired by a married woman by descent to such as descended to her after the passage of the act, and the Code is also in terms limited to causes of action which have accrued since its passage. (Sec. 73.)

It is not necessary to decide whether Mrs. Crawford has had a right of entry since the adverse possession of Davidson began. It does not distinctly appear when she was married, except that her marriage occurred before the death of her father. He died in February, 1848 or 1849; and if it was in 1848, then Mrs. Crawford was married before the passage of the earliest act for the protection of married women, namely, the act of April 7, 1848. Consequently the right of entry belonged to her husband. The act of April 7, 1848, did not include property which a married woman took by

descent, but, by an amendatory act passed April 11th, 1849, this defect was remedied. According to all the testimony, however, Mrs. Crawford was married before that act was passed. Whatever marital rights in the property in question her husband had acquired remained unaffected by the act of 1849. We need not define those rights, because, if Mrs. Crawford had a right of entry when the adverse possession of Davidson commenced, the disability of her coverture has continued ever since that time, and has not yet been removed. Even if the title of her co-tenants has been barred by the statute of limitations, her's has not.

All the questions to which we have adverted were distinctly presented to the judge at the trial by the defendant's requests for additional findings in respect to them. We think the judge erred in refusing to grant those requests.

The judgment must be reversed and a new trial granted, with costs to abide the event.

Present — BARNARD, P. J., GILBERT and DYKMAN, JJ.

Judgment reversed and new trial granted, costs to abide event.